**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DESMOND CHARLES PARKER (#569648)** **CIVIL ACTION**

**VERSUS** **23-1493-JWD-RLB**

**CHAPLAIN KERR, ET AL.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 14, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DESMOND CHARLES PARKER (#569648)** | **CIVIL ACTION** |
| **VERSUS** | |
| | **23-1493-JWD-RLB** |
| **CHAPLAIN KERR, ET AL.** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the Defendants' Motion for Summary Judgment (R. Doc. 66). Defendants move for summary judgment relying upon the pleadings, a Statement of Uncontested Facts, the deposition of the plaintiff, and the affidavit of Chaplain Payne. Plaintiff opposes the Motion relying upon the pleadings. *See* R. Doc. 67. Defendants have filed a Reply. *See* R. Doc. 68.

**Summary Judgment Standard**

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v.*

*Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

**Plaintiff's Allegations**

In his Complaint, the plaintiff alleges that, beginning on March 23, 2023, and lasting through Ramadan, defendants Kerr and Payne prohibited the plaintiff from practicing his religion by not allowing him to attend certain ceremonies and failing to provide him with an appropriate religious diet. Specifically, the plaintiff was not allowed to participate in any Ramadan ceremonies in 2023 and was not given a Halal diet. *See* R. Doc. 1. The plaintiff offered additional details as to his claims in his deposition which are summarized below. *See* R. Doc 66-2.

In his deposition, the plaintiff testified to the following: In his intake paperwork the plaintiff identified his religion as Pentecostal. Before entering prison, the plaintiff never practiced Islam. Around the age of 40 he became interested in Islam. Sometime in 2022 the plaintiff determined that his religious beliefs aligned with the Islamic religion. Plaintiff took his Shahada about a week before Ramadan in 2023.

On March 23, 2023, the plaintiff met with Chaplain Kerr about his Islamic faith for the first time. He asked Chaplain Kerr to change the religious preference on his rap sheet so that he could participate in Ramadan. Plaintiff was told to come back in a couple days and upon return was informed by Chaplain Kerr that he had discussed the matter with Chaplain Payne. Chaplain Kerr informed the plaintiff that his request would be denied and instructed the plaintiff to take some classes and come back in 90 days.

On April 26, 2023, the plaintiff met with Chaplain Payne about a religious diet. He requested the pescatarian diet provided to inmates that were part of the Rasta community because it was Halal. The diet provided to most of the Muslim community was only a non-pork diet, which was what was initially offered to the plaintiff. The plaintiff explained that the non-pork diet would not comply with his religious beliefs and Chaplain Payne offered to list the plaintiff as a different religion in order to accommodate his requested religious diet. The plaintiff refused because he would not be able to participate in Ramadan ceremonies in the future if his religion was listed as Rasta or Buddhist. Therefore, plaintiff was requesting to be identified as Muslim but be provided with a religious diet specified for another religion that was Halal.

Chaplain Payne asked the plaintiff if he could just remove the meat from his tray and eat only the vegetables. Plaintiff did that for approximately 30 days until he began receiving a

vegetarian diet in early June of 2023, which is Halal but also caused him to suffer from weight loss and fatigue.

Halal food items were also available in the commissary. Plaintiff bought these items and ate them during Ramadan. Other inmates also shared Halal food with the plaintiff. A pescatarian diet is not required by Islam, but plaintiff desired the pescatarian diet because it is Halal.

In response to the plaintiff's allegations, defendant Chaplain Payne stated the following in this affidavit (R. Doc. 66-3): The plaintiff met with Chaplain Kerr on March 23, 2023, and requested to be placed on the list for prisoners to attend Ramadan activities. The policy regarding exemptions for religious purposes required that the plaintiff complete a form and return it within 30 days of receipt. Chaplain Kerr discussed the plaintiff's religious record and discernment and the requirements for requesting a religious exemption under the policy. Plaintiff did not submit a written request for a religious accommodation on March 23, 2023. Since the plaintiff did not follow proper procedure and did not meet the criteria set forth in the policy, his request for accommodations could not be granted.

Chaplain Payne met with the plaintiff on April 26, 2023, and discussed plaintiff's request for a change of his religious identification and a change in his meal plan. Plaintiff requested religious accommodations available for Muslims and Rastafarians. The request for accommodations available to different religions led Chaplain Payne to question the plaintiff's request. When the meeting concluded, it was still unclear to Chaplain Payne what religious identifications and accommodations the plaintiff was requesting. Nevertheless, Chaplain Payne offered the plaintiff various dining options and approved a vegetarian diet for the plaintiff to begin on June 2, 2023.

***RLUIPA***

The Religious Land Use and Institutionalized Persons Act of 2000, § 2 et seq., 42 U.S.C.A. § 2000cc et seq. prohibits imposing a substantial burden on an inmate's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1(a). RLUIPA provides a private cause of action for an inmate to enforce this right. 2 U.S.C. § 2000cc–2(a). It states, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a).

"Congress enacted RLUIPA to address 'frivolous or arbitrary' barriers impeding [prisoners'] religious exercise...." *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005)). RLUIPA's provisions are sweeping: "Congress enacted RLUIPA ... 'in order to provide very broad protection for religious liberty.'" *Holt v. Hobbs*, 547 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S.682, 693 (2014)).

RLUIPA established a burden-shifting framework for analysis. *Ali v. Stephens*, 822 F.3d 776, 782 (5th Cir. 2016). First, the plaintiff must make two showings: "(1) the relevant religious exercise is 'grounded in a sincerely held religious belief' and (2) the government's action or policy 'substantially burden[s] that exercise' by, for example, forcing the plaintiff 'to engage in conduct that seriously violates [his or her] religious beliefs.' " *Id.* at 782–83 (quoting *Holt*, 547 U.S. 352, 361). Once the plaintiff satisfies these requirements, the burden shifts to the

government, which must “show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest.” *Id.* at 783.

Plaintiff cannot recover monetary damages against the defendants in their individual capacities under RLUIPA. *Landor v. La. Dep't of Corrs. and Pub. Servs.*, 82 F.4th 337, 344 (5th Cir. 2023), *aff'd* 146 S. Ct. 1931 (2026). Nor can the plaintiff recover monetary damages against the defendants in their official capacities. *Sossamon v. Texas*, 563 U.S. 277 (2011). However, plaintiff’s claim for injunctive relief asserted against the defendants in their official capacities is not barred. *See Mayfield v. Tex. Dep't of Criminal Justice,* 529 F.3d 599, 604-05 (5th Cir. 2008).

In his Complaint, plaintiff requests freedom to practice Islam, including a proper diet. Plaintiff testified in his deposition that his rap sheet has been changed to reflect that he is Muslim, that he has participated in Ramadan every year after 2023, and before the end of Ramadan in 2023 he was approved to attend Eid al-Fitr, a Muslim celebration marking the end of Ramadan. Additionally, in June of 2023 the plaintiff began receiving a vegetarian meal, which is Halal. As such, the plaintiff’s requests for injunctive relief are moot. *See Barnes v. Pierce*, 338 F. App’x. 373, 376 (5th Cir. 2009) (claims for injunctive and declaratory relief under the First Amendment and RLUIPA mooted when the plaintiff’s circumstances and prison policy had changed, allowing him to attend religious services as requested).

To the extent the plaintiff argues that he is still not receiving a Halal diet because it does not include Halal meat, fish or fowl, Plaintiff has failed to state a claim under RLUIPA. Federal courts have consistently recognized that a failure to provide Halal meat does not amount to a substantial burden on religious exercise when vegetarian options are available. *See e.g., Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008); *Bryant v. Davis*, 2020 WL 8084348, at *10 (E.D. Tex. Aug. 11, 2020), *report and recommendation adopted*, 2021 WL 76172 (E.D. Tex. Jan.

7, 2021); *Baker v. Davis*, 2018 WL 4090959, at *11-12 (E.D. Tex. Aug. 20, 2018), *report and recommendation adopted*, 2018 WL 4685459 (E.D. Tex. Sept. 28, 2018) (holding that "[m]uslim inmates may select a pork-free diet tray or a vegetarian diet tray, either of which can satisfy the requirement of abstention from pork."). "Plaintiff may prefer Halal meat entrees over the vegetarian and non-meat substitutes provided, but his food preferences, as a prisoner may be limited." *Sareini v. Burnett*, 2011 WL 1303399 (E.D. Mich. Mar. 31, 2011).

Plaintiff presents no probative summary judgment evidence that his Muslim faith prohibits the consumption of meat-free meals, or that the vegetarian meals offered by the prison do not constitute Halal meals for purposes of his religious dietary beliefs. He does not establish that consuming vegetarian meals influences him to act in a way that violates his religious beliefs, or forces him to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. Consequently, he fails to show that the prison's policies and practices substantially burden his free exercise, and no RLUIPA violation is shown[1].

***Free Exercise Clause of the First Amendment***

The Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, prohibits conduct which unreasonably impinges upon the free exercise

---

[1] Defendants did not address the plaintiff's request for injunctive relief under RLUIPA; however, the Court possesses the authority to *sua sponte* expand upon the grounds for dismissal urged by the movant as long as the plaintiff receives notice and a chance to respond. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (*citing Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322 (5th Cir. 1995) (district court *sua sponte* dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer). **This Report and Recommendation provides adequate notice to the plaintiff**. *McCoy v. Wade*, No. 06-2292, 2007 WL 1098738, at *1 (W.D. La. Mar. 12, 2007). "[I]t is well-settled that a district court may grant summary judgment *sua sponte* [on its own motion], so long as the losing party has ten days notice to come forward with all of its evidence in opposition to summary judgment." *Shepard v. Gulf Coast Community Services*, 221 Fed.Appx. 308, 310 (5th Cir. 2007), (*citing Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 (5th Cir. 2000)). The 14-day objection period to this Report and Recommendation is sufficient to satisfy the notice requirement. *See Bustinza v. Lucio*, No. 19-36, 2022 WL 1548118, at n. 1 (S.D. Tex. March 4, 2022), (*citing U.S. v. Willis*, 273 F.3d 592, 597 (5th Cir. 2001)).

of an inmate's religious beliefs. *Copeland v. Livingston,* 464 Fed. App'x. 326 (5th Cir. 2012). While inmates retain their First Amendment religious rights notwithstanding their incarcerated status, the exercise of these rights is subject to reasonable restrictions and limitations necessitated by penological goals. *O'Lone v. Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). *See also Baranowski v. Hart,* 486 F.3d 112 (5th Cir. 2007), *citing Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). A prison action or regulation that impinges upon an inmate's First Amendment constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safely, supra.*

As noted recently by the Court in *Woods v. Collier*, 2026 WL 742104 (E.D. Tex. Feb. 18, 2026), Fifth Circuit precedent does not require a prison food service program to provide a religious diet to any religious group under the First Amendment:

> "The Fifth Circuit has never held that inmates of any faith enjoy a First Amendment right to the religious diet of their choice." *Holmes v. Davis*, No. 6:20cv333, 2021 WL 2152544 at 4 (E.D. Tex. Mar. 30, 2021), *report and rec. adopted*, No. 6:20cv333, 2021 WL 2141486 (E.D. Tex. May 26, 2021). In *Kahey v. Jones*, the Fifth Circuit held that the prison was not required to accommodate a Muslim inmate's request for a kosher diet, with particularized requirements regarding the content and preparation of his food. *Kahey v. Jones*, 836 F.2d 948, 950-51 (5th Cir. 1988). The court reasoned that the prison had a "legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant." *Id.* The court found that granting the inmate's request would be expensive, would divert resources from other penological goals, and could result in the perception of favoritism. *Id.* at 951. Additionally, the court found that there were simply no ready alternatives to satisfy the inmate's personal dietary requirements at a *de minimis* cost to the prison. *Id.*
>
> Additionally, in *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), the Fifth Circuit more recently considered whether prison officials' failure to provide a kosher diet to Jewish prisoners violated an inmate's First Amendment right to practice his religion. In partial reliance on *Kahey* and *Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1987), and after applying the *Turner* factors, the court rejected the Plaintiff's First Amendment claim, noting that vegetarian and pork-free meal options were available for Jewish prisoners, and that providing kosher meals would be extremely costly. *Id.* at 117-18, 121-22. Further, in a 2016 unpublished opinion, the Fifth Circuit held that the First Amendment does not require prisons to provide halal meals to Muslim inmates:
>
> *Baranowski* resolves the immediate appeal with regard to the First Amendment claim. Plaintiff in *Baranowski* challenged a prison's denial of a kosher diet, and our court

> rejected his challenge. In doing so, our court noted that, "[i]n *Kahey*, we held that the prison was not required to accommodate a Muslim inmate's request for a kosher diet, with particularized requirements regarding the content and preparation of food." Omran's First Amendment claim likewise fails.
>
> *Omran v. Prator*, 674 F. App'x 353, 355 (5th Cir. 2016), cert. denied, 138 S. Ct. 74 (2017) (citations omitted).
>
> More recently, relying on *Baranowski*, the Fifth Circuit held that an inmate's claim under the Free Exercise Clause of the First Amendment fails because it has "already ruled that prisons need not respond to particularized religious dietary requests to comply with the First Amendment." *Lozano v. Shubert*, 770 F. App'x 687, 687 (5th Cir. 2019).
>
> Fifth Circuit precedent does not require a prison food service program to provide a religious diet to any religious group under the First Amendment. Moreover, TDCJ has a legitimate penological interest in operating a simplified prison food service rather than a full-scale restaurant. *Kahey*, 836 F.2d at 950. Accordingly, Plaintiff has not stated a claim upon which relief can be granted against the Defendants in their individual capacities."

The First Amendment provides less protection than the RLUIPA. *Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015). Plaintiff's related RLUIPA claim fails as discussed above, and under the less stringent First Amendment standard which does not require a prison food service program to provide a religious diet.

**Plaintiff's Opposition**

Plaintiff first asserts that the defendants' Motion is untimely. On June 2, 2026, the Court ordered that cross-motions for summary judgment be filed within 90 days of the date of the Order. *See* R. Doc. 53. As such, cross-motions for summary judgment were due on August 31, 2026, the date defendants filed their Motion. As such, the Motion was timely filed.

Plaintiff also asserts that he has not received a copy of Chaplain Payne's affidavit and has not received a complete copy of his own deposition transcript. Attached to the defendants' Reply is the Affidavit of Azure Risbrook, who states that she personally mailed these documents, and others, to the plaintiff on August 31, 2026. *See* R. Doc. 68-2.

Regardless, as to Chaplain Payne's affidavit, even if the Court were to not consider the affidavit, all the information contained therein is already in the record in a series of emails

authored by the defendants. *See* R. Docs. 42-4 and R. Docs. 54-1 – 7. Furthermore, the recommendation to grant the defendant's Motion for Summary Judgment is not based on Payne's affidavit but rather is based upon the plaintiff's allegations in his Complaint and deposition.

As to the deposition, the Court has before it the entirety of the plaintiff's deposition and has considered the same. The plaintiff has not identified any basis upon which he would have opposed the Motion for Summary Judgment had he had a complete copy of his deposition. Moreover, nothing in the plaintiff's deposition presents a genuine issue of material fact. Consequently, there is nothing in the deposition that the plaintiff could have used to oppose the defendants' Motion for Summary Judgment. As such, the Court can see no reason to disregard the deposition simply because the plaintiff alleges that he did not receive a complete copy of the transcript.

Based upon Plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, and failure to produce supporting evidence on his own behalf, the Court concludes that Defendants' motion is well-taken and that, on the record before the Court, Defendants are entitled to summary judgment as a matter of law.

**RECOMMENDATION**

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 66) be granted, and that this action be dismissed, without prejudice. It is further recommended that all other pending motions (R. Docs. 52, 58, 64 and 69) be denied as moot.

Signed in Baton Rouge, Louisiana, on October 14, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**